UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| JULIAN HEICKLEN,<br><br>                           Plaintiff,<br><br>    -against-<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, NEW YORK CITY FIRE DEPARTMENT, SAINT VINCENT HOSPITAL, BELLEVUE MEDICAL CENTER, NEW YORK DOWNTOWN HOSPITAL, U.S. CENTRAL VIOLATIONS BUREAU, et al.<br><br>                           Defendants. | **DECLARATION IN SUPPORT OF DEFENDANT NEW YORK DOWNTOWN HOSPITAL'S MOTION**<br><br>10 Civ. 2239 (RJH) (JLC) |

------------------------------------------------------------------------X

      ALEXANDRA FRIDEL, an attorney duly admitted to practice law before the United States District Court for the Southern District of New York, and associated with the firm of MARTIN, CLEARWATER & BELL, LLP, attorneys for defendant NEW YORK DOWNTOWN HOSPITAL (hereinafter "NYDH"), hereby declares the following to be true under penalty of perjury:

      1.    I am fully familiar with the facts and circumstances of this action by virtue of a review of the file maintained at the offices of your Declarant.

      2.    This Declaration is submitted in support of NYDH's motion pursuant to Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing all of plaintiff's claims against NYDH with prejudice, for failure to state any claims upon which relief can be granted, together with such other and further relief as this Court deems just and proper.

**PRELIMINARY STATEMENT**

3. This action stems from six separate incidents between October and November of 2009, on which plaintiff Julian Heicklen (hereafter "Mr. Heicklen" or "plaintiff) appeared outside of the United States District Court for the Southern District of New York to distribute "jury information" pamphlets. On each of those occasions, Mr. Heicklen was allegedly advised that he could not distribute literature on federal property without a permit. By his own admission, on each occasion, Mr. Heicklen refused to cooperate with New York State Court Officers, Federal Marshals, or Homeland Security Officers, which led to his arrest. On several of the six occasions, he was taken to co-defendants Saint Vincent's Hospital and Bellevue. On the final of the six incidents about which plaintiff complaints, November 23, 2009, he was taken to defendant NYDH after dropping to the pavement and becoming unresponsive. Mr. Heicklen was transported to NYDH in an ambulance affiliated with St. Vincent's Medical Center, and the emergency response team was not employed by NYDH. Upon arrival at NYDH, Mr. Heicklen presented as unresponsive and uncooperative with the NYDH staff. Mr. Heicklen was at NYDH for approximately sixty-one minutes, and was released immediately after he decided to speak with the NYDH staff, at which point it was determined that he was not experiencing a medical emergency, and not a danger to himself or others. Plaintiff's sixty-one minute stay in the emergency department of NYDH where he faked unresponsiveness was his singular interaction with NYDH, and the hospital's sole involvement in this action.

**PROCEDURAL HISTORY**

4. This action was commenced with the filing of a Complaint by plaintiff with the Southern District of New York on or about March 15, 2010 (*see*, Exhibit "A").

5. On or about May 19, 2010, plaintiff served a Summons and Complaint on defendant NYDH.

6. In lieu of serving an Answer, on June 3, 2010 NYDH requested permission from the Honorable Justice Holwell to file a pre-answer motion to dismiss plaintiff's complaint. On June 24, 2010, Justice Holwell ruled that a pre-motion conference was not necessary, and granted NYDH permission to file the motion (*see*, DE 11)[1]. However, the office of your Declarant was not aware that Judge Holwell had ruled on NYDH's request until after the deadline to file the motion passed. Consequently, after obtaining plaintiff's consent, the office of the Declarant requested a brief extension for the filing of the motion on behalf of NYDH.

7. On September 7, 2010, Judge Holwell granted NYDH's application for an extension of time in which to file a pre-answer motion to dismiss, and ordered that NYDH had until September 22, 2010 to file its motion (*see*, DE 16). Accordingly, the instant motion is timely.

**STATEMENT OF FACTS**

8. NYDH's sole interaction with Mr. Heicklen occurred on November 23, 2009. On that date, at approximately 1:34 p.m., an unresponsive male was transported to the NYDH Emergency Department (hereinafter "ED") via ambulance (*see*, plaintiff's chart from NYDH, annexed hereto as Exhibit "B", p. 1).

9. According to the ED records, the emergency medical technicians who transported plaintiff to NYDH reported that Mr. Heicklen had been found laying in front of a court house,

---

[1] "DE" refers to Docket Entry on the Southern District of New York's Electronic Filing System for CASE #: 1:10-cv-02239-RJH-JLC.

but not responding to any stimuli. Accordingly, he was taken to the nearest hospital (*see*, Exhibit "B", p. 6 under "associated symptoms").

10. Annexed hereto as Exhibit "C" is the Affidavit of Antonio Suarez, who is the Director of Emergency Medical Services and Emergency Management at NYDH. As set forth more fully in Mr. Suarez's Affidavit, the ambulance which transported plaintiff to NYDH was not owned, operated, or in any way managed by NYDH, and the emergency medical technicians were not employed or affiliated with NYDH.

11. Annexed hereto as Exhibit "D" is the Affidavit of Arlene Eastman, who is the Director of Emergency Services and the Emergency Department at NYDH. As Ms. Eastman states in her Affidavit, Mr. Heicklen was uncooperative with the NYDH ED triage and nursing staff, and was unresponsive to all of the triage/nursing staff's attempts to obtain identifying information, medical history or assess plaintiff's condition.

12. Accordingly, in light of the fact that the plaintiff presented unresponsive to NYDH, to ensure that the plaintiff was not suffering from a medical emergency, the ED triage staff performed a basic physical examination, which included taking the plaintiff's vital signs and his blood pressure. An electrocardiogram was also performed (*see*, Exhibit "B", p. 6, p. 10, and Exhibit "D").

13. Plaintiff's vital signs were normal, and his electrocardiogram indicated borderline left axis deviation. No intravenous injections were performed, and no bloods were drawn for laboratory testing (*see*, Exhibit "D").

14. A physician, Nancy Fu, M.C was also called to examine the plaintiff.[2]

---

[2] Plaintiff's Complaint states that he was examined by "Dr. Cho." However, plaintiff was mistaken as the medical records indicate that the physician who evaluated him was actually Nancy Fu, M.D.

15. The records indicate that once Dr. Fu arrived, plaintiff decided to cooperate and answer her questions. Dr. Fu documented that plaintiff denied head injury, hallucinations or loss of consciousness. Rather, Mr. Heicklen advised Dr. Fu that he had been handing out flyers in front of a Court House and "went limp" to avoid being charged with "resisting arrest" (*see*, Exhibit "B", p. 7).

16. After explaining the situation to Dr. Fu, he was deemed to be in stable condition and cleared for discharge. Mr. Heicklen was discharged home as approximately 2:35 p.m. He signed the discharge instructions as "John Galt," the hero of the novel Atlas Shrugged by author Ayn Rand (*see*, Exhibit "B", p.8, p. 11).

17. <u>In his Complaint, Mr. Heicklen admits that he purposefully refused to communicate with the ED staff at NYDH</u>. Mr. Heicklen further admits in his Complaint that NYDH staff made efforts to identify Mr. Heicklen by calling two people listed in his cell phone but these persons also refused to cooperate pursuant to Mr. Heicklen's prior instructions (*see*, Exhibit "A", p. 59, para. 190).

18. Furthermore, Mr. Heicklen readily admits in his Complaint that when he finally decided to explain himself to the ED physician and asked to be discharged from NYDH, he was discharged within 15 minutes (*see*, Exhibit "A" at p. 59-60, para. 191-193).

19. Thus, it is undeniable that Mr. Heicklen remained at NYDH for sixty-one minutes by his own conscious choice, and in what was obviously an effort to lay a frivolous basis for a future action against NYDH. Had Mr. Heicklen simply decided to explain himself upon presentation to the Hospital, then he would have been immediately discharged. Moreover, had Mr. Heicklen any at time prior to his conversation with Dr. Fu decided to voice his objections to

a basic physical examination and explain his self-imposed unresponsiveness, the NYDH nursing and triage staff might have pursued a different plan of action with regard to his care.

20. Annexed hereto is Exhibit "E" is an Affidavit from Anthony Mustalish, M.D. a physician duly licensed to practice medicine in the State of New York, who states based upon a reasonable degree of medical certainty, that the care provided to Mr. Heicklen at NYDH was at all times proper and appropriate given his presenting condition.

21. Annexed hereto as Exhibit "F" is an Affidavit from Marie Cavanagh, the Director of Risk Management at NYDH, who affirms that NYDH is a private, not-for-profit corporation, as opposed to a sate or federally run institution.

22. NYDH is lower Manhattan's only hospital, and strives to best serve the local community. Mr. Heicklen, in pretending to be unresponsive, which had to be considered as a possible medical emergency, was taking away precious resources from a person in need.

23. Significantly, even after he decided to cease faking unresponsiveness, Mr. Heicklen nevertheless refused to provide his address or any medical insurance information. Thus, Mr. Heicklen left NYDH to suffer the monetary costs associated with providing his ED care (*see*, Exhibit "A" at p. 59, para. 193).

24. Accordingly, it is respectfully requested that Mr. Heicklen's blatant disregard for the real costs incurred by NYDH due to Mr. Heicklen's self-imposed behavior while in the ED, and the subsequent costs associated with defending itself from a baseless legal action should not be tolerated by this Court.

**ARGUMENT**

25. Also filed in support of this application is defendant NYDH's Memorandum of Law. As will be more fully explained therein, plaintiff has asserted six causes of action against

NYDH: deprivation of constitutional rights in violation of 42 USC §1983; kidnapping pursuant to 18 USCS §1201(a), unlawful imprisonment, kidnapping and custodial interference pursuant to New York Penal Code §135.00; unlawful imprisonment in the second degree pursuant to New York Penal Code § 135.05, and kidnapping in the second degree pursuant to New York Penal Code § 135.2; assault pursuant to 18 USCS§ 351(e); coercion in the second degree pursuant to New York Penal Code § 135.6; conspiracy pursuant to 18 USC §241; official misconduct pursuant to New York Penal Code § 195.00 and enterprise corruption pursuant to New York Penal Code § 460.2 (*see*, Exhibit "A" p. 62-70, para. 214-246).

26. However, plaintiff's Complaint does not set forth any facts in support of these alleged causes of action. In contrast, plaintiff admits that he was only at NYDH on one occasion, November 23, 2009. He further admits that on November 23, 2010, his unresponsiveness in the hospital was self-imposed, but that upon deciding to speak to a physician and explaining that he was consciously unresponsive to avoid a charge of "resisting arrest," plaintiff admits immediate discharge from the Hospital. Plaintiff further admits that he was discharged from NYDH at 2:35 p.m., within 15 minutes of deciding to be responsive.

27. NYDH is not a state actor, and as a private hospital cannot be sued for deprivation of plaintiff's constitutional rights.

28. Moreover, plaintiff has asserted no facts which would support causes of action for assault, coercion, kidnapping/unlawful detention, conspiracy, or official misconduct. Nor can plaintiff bring a civil action in Federal Court seeking redress pursuant to the New York State Penal Code.

29. In short, plaintiff can establish no viable claim against NYDH. As such, dismissal of plaintiff's Complaint, with prejudice, is wholly warranted for all of the claims asserted against NYDH.

**WHEREFORE**, it is respectfully requested that defendant NYDH's motion be granted in its entirety, and that the plaintiff's Complaint be dismissed with prejudice as to NYDH.

Executed:   New York, New York
September 22, 2010

By *Alexandra Fridel*
Alexandra Fridel (AF-0304)