UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/30/11
```

JULIAN HEICKLEN,               :

              Plaintiff,       :        **REPORT AND**
                               :        **RECOMMENDATION**
                               :
                               :        10 Civ. 2239 (RJH) (JLC)
      -v.-                      :
                               :        (Non-ECF Case)
U.S. DEPARTMENT OF HOMELAND    :
SECURITY, et al.,              :
              Defendants.      :
                               :
------------------------------------------------------------x

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Richard J. Holwell, United States District Judge:**

This action arises out of the distribution of jury nullification pamphlets by pro se

Plaintiff, Julian Heicklen ("Heicklen"), outside the federal district court in Manhattan on six

separate occasions during the fall of 2009, each of which resulted in Heicklen's arrest by federal

officers and his transportation to local hospitals for evaluation.  Heicklen alleges (1) Bivens

violations by the Department of Homeland Security ("DHS") Secretary Janet Napolitano

("Napolitano"); Homeland Security Federal Protective Services Officers C. Barnes, Wong, and

Roond and Officers John Does 1-8 (the "Officers"); the U.S. Central Violations Bureau (the

"Bureau"); and Michael F. Oakes ("Oakes") (together, the "Federal Defendants"); and (2)

deprivation of various constitutional rights in violation of 42 U.S.C. § 1983 by the New York

City Fire Department ("FDNY") and two of its employees; New York Downtown Hospital (the

"Hospital") and several of its employees; Bellevue Medical Center ("Bellevue"), and several of

its employees; St. Vincent's Medical Center ("St. Vincent's") and several of its employees; and

the New York City Health and Hospitals Corporation ("HHC").  Heicklen seeks, among other

things, compensatory and punitive damages.

1

USDC SDNY
DATE SCANNED_____5/30/11____

Currently before the Court are motions to dismiss by the Federal Defendants, the

Hospital, and the FDNY.  The Federal Defendants move to dismiss the complaint pursuant to

Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.  The Hospital and

the FDNY each move to dismiss pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of

Civil Procedure.  For the reasons set forth below, I recommend that (1) each of these defendants'

motions be granted and the claims against them and HHC be dismissed with prejudice; and (2)

the Court sua sponte dismiss the claims against each of the remaining defendants without

prejudice, except for St. Vincent's against whom this action remains stayed pursuant to 11

U.S.C. § 362(a).

## I.   BACKGROUND

### A.  Factual Overview

The following facts are taken from the complaint and are accepted as true for purposes of

deciding the instant motions.

Beginning on October 19, 2009 and continuing for several weeks, Heicklen appeared

outside of the United States Courthouse at 500 Pearl Street in Manhattan (the "Courthouse") to

hand out pamphlets of an organization called the Fully Informed Jury Association that advocates

jury nullification, along with his own flyer (together, the "literature").  Complaint dated January

27, 2010 ¶ 80-81 & Exs. B, C (the "complaint" or "Compl.") (Dkt. No. 1).  Heicklen's flyer

stated as follows:

> THE JUDGE WILL INSTRUCT THE JURY THAT IT MUST UPHOLD THE
> LAW AS HE GIVES IT.  HE WILL BE LYING.  THE JURY MUST JUDGE
> THE LAW AS WELL AS THE FACTS.  JURIES WERE INSTITUTED TO
> PROTECT CITIZENS FROM THE TYRANNY OF GOVERNMENT.  IT IS
> NOT THE DUTY OF THE JURY TO UPHOLD THE LAW.  IT IS THE
> JURY'S DUTY TO SEE THAT JUSTICE IS DONE.

2

Id. Ex. C.  The claims in the complaint arise out of six incidents that occurred while Heicklen

was in the midst of his pamphleteering in front of the Courthouse.  Id. ¶¶ 80, 107, 131, 153, 166,

178.

The first incident occurred on October 19, 2009.  Id. ¶ 80.  Heicklen was distributing his

literature in the middle of the plaza in front of the Courthouse and was eventually approached by

a Homeland Security Officer who informed Heicklen that he could not distribute literature on

federal property without a permit and asked him to leave.  Id. ¶ 82.  Heicklen refused and

continued handing out the pamphlets.  Id. ¶¶ 82, 84.  A few minutes later, another officer

approached Heicklen and again informed him that he could not distribute his literature on federal

property without a permit.  Id.  Stating to the officers that his "permit" was the First Amendment

of the Constitution, Heicklen refused to leave.  Id. ¶ 86.  Heicklen continued distributing his

literature.  Id. ¶ 87.  A few minutes later, another group of officers approached Heicklen and

after he again refused to leave, the officers placed him under arrest, after which he fell to the

ground and remained limp and silent.  Id. ¶¶ 89-94.  Shortly thereafter, an ambulance was called

and Heicklen was taken to St. Vincent's.  Id. ¶¶ 96-97.  After eventually speaking to a staff

psychiatrist, Heicklen was released.  Id. ¶¶ 101-04.

The next incident occurred on October 26, 2009.  Id. ¶ 107.  Heicklen stood in the plaza

in front of the Courthouse distributing his literature and, after being approached by officers

Barnes, Wong, and Roond—the same officers with whom he had interacted the previous week—

and refusing to stop distributing the literature, was placed under arrest and given citations for

unlawful distribution of flyers on federal property and for impeding/opposing a federal officer.

Id. ¶¶ 107-08, 112, 117-18 & Exs. E-F.  An ambulance arrived and Heicklen was taken to

Bellevue.  Id. ¶ 119.  After speaking with a staff psychiatrist, Heicklen was released.  Id. ¶ 122.

3

One week later, on November 2, 2009, Heicklen again appeared in the plaza in front of the Courthouse and began distributing his literature. Id. ¶¶ 131, 133. Several officers approached Heicklen and told him that he could not pass out the literature on federal property; however, Heicklen ignored this directive. Id. ¶¶ 134, 136. One of the officers then informed Heicklen that he was under arrest, and Heicklen "fell to the ground face down." Id. ¶ 137. After laying on the ground for more than an hour, Heicklen was placed in an ambulance and again taken to Bellevue. Id. ¶ 139. Once there, Heicklen "made a fuss to see someone in charge, so that he could either be released or brought in front of a magistrate." Id. ¶ 142. After his requests were ignored and he had become more persistent, Heicklen was given, against his wishes, a shot of thorazine to calm him down. Id. ¶¶ 143-44. Heicklen slept through the night, was interviewed by a psychiatrist and social worker the following day, and was then released from Bellevue. Id. ¶¶ 144, 149.

On November 9, 2009, Heicklen again distributed his literature in the plaza in front of the Courthouse. Id. ¶ 153. He was eventually approached by Officers Musumeci and Barnes, who informed him that he had to leave. Id. ¶ 155. When Heicklen refused, another group of officers, including Officer Barnes, approached Heicklen and placed him under arrest, prompting Heicklen to fall to the ground. Id. ¶¶ 156-57. Heicklen also received a citation for distribution of flyers on federal property. Id. ¶ 157 & Ex. J. Antonio Musumeci ("Musumeci"), a reporter who had been filming the events and who originally was a named plaintiff in this action, was also arrested.[1] The officers left shortly thereafter, Heicklen "stood up[,] and the event was over." Id. ¶ 161.

---

[1] By Order dated April 6, 2010, Chief Judge Preska dismissed Musumeci's claims without prejudice after he made an application to her requesting that he be "removed as plaintiff from this civil action." Order dated April 6, 2010 (Dkt. No. 3).

4

A similar series of events unfolded on November 16, 2009. Id. ¶ 166. Heicklen distributed his literature in the plaza in front of the Courthouse, was asked to leave by certain federal officers, refused, and shortly thereafter was placed under arrest by several officers, including Officer Barnes. Id. ¶ 166. Officer Barnes gave Heicklen a citation for unauthorized distribution of flyers, then "unarrested" Heicklen and, along with the rest of the officers, "left the scene." Id. ¶ 170 & Ex. N.

The final incident described in the complaint took place on November 23, 2009. Id. ¶ 178. Heicklen was distributing his literature in the plaza in front of the Courthouse when three officers approached him and asked him who he was. Id. ¶ 180. When Heicklen reached into his bag for his clipboard, one of the officers grabbed Heicklen's arm and placed him under arrest. Id. ¶ 181. In response, Heicklen fell to the ground, silent, and remained there for about a half hour. Id. Medics from the FDNY soon arrived and when Heicklen did not respond to their attempt to communicate with him, they "pounded on [his] chest and shoulders to try to get him to respond" but Heicklen remained unresponsive. Id. ¶ 185. The medics subsequently searched Heicklen for identification and, in doing so, "put a three inch rip" in Heicklen's pants. Id. ¶ 186.

Shortly thereafter, an ambulance arrived, and Heicklen was placed inside of it, still unresponsive. Id. ¶ 187. The medics from the ambulance "punched" Heicklen in the chest and shoulders "to get him to talk;" however, he refused. Id. Heicklen was then taken to the Hospital where he received a thorough medical exam and was eventually released. Id. ¶¶ 188, 192-93.

Heicklen later received four notices from the United States Courts' Central Violations Bureau each ordering him to pay a $100.00 fine or to appear before a Magistrate Judge in the Courthouse on January 19, 2010. Id. ¶¶ 199-200 & Exs. R-S. Heicklen failed to appear. Id. ¶ 203.

5

## B. Procedural History

Heicklen filed the instant complaint on March 15, 2010.  The Defendants listed in the 269

paragraph pleading are the Federal Defendants; the FDNY and two John Doe defendants

employed there—"ambulance attendants 1 and 2;" the Hospital and several John and Jane Doe

defendants employed there; HHC; St Vincent's and several John and Jane Doe defendants

employed there; and Bellevue and several John and Jane Doe defendants employed there.[2]

On June 14, 2010, Heicklen filed a proof of service, along with affidavits from process

servers, and stated that he had effectuated service on some but not all of the Defendants listed in

the complaint:  the Federal Defendants; HHC; St. Vincent's; Bellevue and the non-John and Jane

Doe employees there; the Hospital; and the FDNY.  Affirmation of Service of Summons dated

June 11, 2010 (Dkt. No. 7).[3]

---

[2] By letter dated September 8, 2010, Heicklen submitted a document regarding additional incidents that, he stated, should be "added to [his] previous complaint in this case."  By Order dated November 12, 2010, I informed Heicklen that if he "wish[ed] to file an amended complaint in this action, he must include information regarding all incidents and all Defendants in a single amended complaint and must label the document as such."  Order dated November 12, 2010 (Dkt. No. 30).  By memorandum endorsement dated November 29, 2010, Judge Holwell set December 30, 2010 as the deadline by which amended pleadings had to be filed (Dkt. No. 32).  Although Heicklen apparently planned to amend the complaint after he learned the names of all of the John and Jane Doe Defendants, he failed to make any attempt to learn their identities through discovery and ultimately did not amend the complaint.  See Letter from Julian Heicklen to the Court dated June 6, 2011 at 1 (Dkt. No. 60).  The deadline to do so has now long passed.

[3] Bellevue was never served, however.  Heicklen's proof of service does not include an affidavit from a process server affirming that Bellevue was served.  Moreover, the individual Bellevue Defendants were not properly served as the summons did not bear their names as required by Fed. R. Civ. P. 4(a).  Order dated October 31, 2010 (Dkt. No. 28).  Accordingly, after denying Heicklen's request for a default judgment against Bellevue, the Court directed the Clerk of the Court to issue an amended summons and the Pro Se Office to send Heicklen a new service package so that he could attempt service again.  Order dated October 31, 2010 (Dkt. No. 28).  There is nothing in the record to establish that Heicklen ever served Bellevue or any of its employees who were named as defendants.

6

By letter dated July 29, 2010, counsel for St. Vincent's advised the Court that their client had filed for bankruptcy protection on April 14, 2010.  Accordingly, by Order dated August 18, 2010, I confirmed that this litigation should be automatically stayed as to St. Vincent's pursuant to 11 U.S.C. § 362(a).  Order dated August 18, 2010, at 1 (Dkt. No. 13).  Moreover, because none of the non-debtor Defendants in the case argued that the automatic stay should also apply to them, I directed them to either meet the existing deadlines to move or answer or seek nunc pro tunc extensions if deadlines had passed because the parties operated under the assumption that this action had also been stayed against them.  Id. at 2-3.  After seeking extensions, each of the served parties in the case moved to dismiss the complaint.

The Hospital filed its motion to dismiss pursuant to Rule 8(a)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure on September 23, 2010.  Memorandum of Law in Support of Motion to Dismiss by Defendant New York Downtown Hospital dated September 22, 2010 ("Hosp.'s Mem.") (Dkt. No. 23).  Heicklen did not file an opposition.  The FDNY filed its motion to dismiss pursuant to Rule 8(a)(2) and Rule 12(b)(6) on February 8, 2011. Memorandum of Law in Support of Defendant New York City Fire Department's Motion to Dismiss the Complaint dated January 31, 2011 ("FDNY's Mem.") (Dkt. No. 39).  Heicklen opposed the motion on March 30, 2011.  Plaintiff's Reply to Memorandum of Law in Support of Defendant New City Fire Department's Motion to Dismiss the Complaint dated March 30, 2011 ("Pl.'s FDNY Opp'n") (Dkt. No. 48).  The FDNY filed its reply on May 11, 2011.  Reply Memorandum of Law in Further Support of Defendant New York City Fire Department's Motion to Dismiss dated May 11, 2011 ("FDNY's Reply") (Dkt. No. 50).

After moving to dismiss a different version of the complaint—apparently the only complaint with which they had been served—the Federal Defendants, with the undersigned's permission, moved to dismiss the operative complaint pursuant to Rules 12(b)(1), 12(b)(5), and

12(b)(6) of the Federal Rules of Civil Procedure on June 15, 2011. Amended Memorandum of Law in Support of Federal Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure Rule 12 dated June 15, 2011 ("Fed. Defs.' Mem.") (Dkt. No. 57). Heicklen filed his opposition to this motion on July 12, 2011. Response to Memorandum of Law in Support of Federal Defendants' Motion to Dismiss dated July 5, 2011 ("Pl.'s Fed. Opp'n") (Dkt. No. 62). The Federal Defendants replied by letter on July 13, 2011. Letter dated July 12, 2011 ("Fed Defs.' Reply") (Dkt. No. 63).

## II.   DISCUSSION

### A. Applicable Legal Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (alteration in original). On a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Velez v. Levy, 401 F.3d 75, 80 (2d Cir. 2005) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion, a plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Although detailed factual allegations are not necessary, the pleading

must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere
legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked
assertions" by the plaintiff will not suffice. Iqbal, 129 S. Ct. at 1949 (alteration in original)
(internal quotations, citations, and alterations omitted).

On a motion to dismiss pursuant Rule 12(b)(1), "[a] case is properly dismissed for lack of
subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power
to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R.
Civ. P. 12(b)(1)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under
Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Id. (citation
omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a
preponderance of the evidence that it exists." Id. (citation omitted).

Finally, since Heicklen is proceeding pro se, his pleadings "'must be held to less stringent
standards than formal pleadings drafted by lawyers.'" Sealed Plaintiff v. Sealed Defendant, 537
F.3d 185, 191 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). The Second
Circuit has concluded, moreover, that "when a plaintiff proceeds pro se . . . the courts are obliged
to construe his pleadings liberally, particularly when they allege civil rights violations."
McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) (citation omitted). Pro se status,
however, "does not exempt a party from compliance with relevant rules of procedural and
substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations omitted).

## B. Claims against the FDNY

The complaint contains only threadbare allegations against the FDNY: that medics from
the FDNY "pounded on [Heicklen's] chest and shoulders" in order to elicit a response from him
after he was approached by officers in front of the Courthouse and subsequently fell mute and
unresponsive on the afternoon of November 23, 2009, and that the medics also put a three inch

9

rip in Heicklen's pants.  Compl. ¶¶ 181, 186.  These actions, Heicklen alleges, violated his civil

rights pursuant to 42 U.S.C. § 1983.  Id. ¶ 214.

The FDNY correctly notes that, as a threshold matter, Heicklen's claims against it should

be dismissed because the FDNY—a municipal agency—cannot be subject to suit.  FDNY's

Mem. at 4-5.  The New York City Charter provides that "all actions and proceedings for the

recovery of penalties for the violation of any law shall be brought in the name of the City of New

York and not in that of any agency, except where otherwise provided by law."  N.Y. City Charter

Ch. 17, § 396; accord Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008)

(per curiam).  Accordingly, the FDNY is not a suable entity and all claims against it should be

dismissed.  See, e.g., United States v. City of New York, 683 F. Supp. 2d 225, 243 (E.D.N.Y.

2010) (citing Warheit v. City of New York, No. 02 Civ. 7345 (PAC), 2006 WL 2381871, at *4

(S.D.N.Y. Aug. 15, 2006)) (dismissing all claims against FDNY because FDNY not suable);

Petaway v. City of New York, No. 02 Civ. 2715 (NGG) (LB), 2005 WL 2137805, at *3

(E.D.N.Y. Sept. 2, 2005) (citations omitted) (same).

Even if Heicklen had sued the City of New York—an action he says he eventually

intends to take, Pl's FDNY Opp'n ¶ 5—his claim would still lack merit as the complaint fails to

satisfy the standard for municipal liability as laid out by the Supreme Court in Monell v.

Department of Social Services of the City of New York, 436 U.S. 658 (1978).  Although a

municipality may be held liable for constitutional violations under Section 1983, it may not be

held liable for the conduct of an employee solely on the basis of respondeat superior—the theory

the complaint alleges here.  Id. at 694.  Instead, "[to] hold a city liable under § 1983 for the

unconstitutional actions of its employees, a plaintiff is required to plead and prove three

elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)

(internal citations omitted).  Where, as here, a plaintiff alleges a single incident by actors below the policymaking level, a municipal policy or custom cannot be shown.  See, e.g., DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("'[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" (quoting Ricciuti v. N.Y. City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991))).

Further, no cognizable constitutional violation has been alleged with respect to the medics.  Although Heicklen claims that medics "pounded on [his] chest and shoulders to try to get him to respond," Compl. ¶ 185, any force applied to Heicklen was, under the circumstances as described by Heicklen, de minimis.  See, e.g., Wims v. N.Y. City Police Dept., No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *4-5 (S.D.N.Y. July 20, 2011) (citing cases) (motion to dismiss excessive force claim granted where plaintiff claimed that officers physically brutalized him and threw him face first on to the ground; level of force de minimis because, among other things, plaintiff identified no specific or identifiable injury as a result of force).  Heicklen does not allege that he suffered any injury as a result of the actions of the medics and even acknowledges that their actions are consistent with "standard [medical] routine."  Letter from Julian Heicklen to the Court dated June 6, 2011 (Dkt. No. 60).  Thus, to the extent Heicklen alleges distinct constitutional claims against the medics, they are without merit.[4]

### C.  Claims against the Hospital

Heicklen's allegations against the Hospital are similarly limited:  he alleges only that he was taken to the Hospital on November 23, 2009, that he received a thorough medical exam and was subsequently released.  Compl. ¶¶ 188, 192-93.  Yet Heicklen nevertheless alleges that the Hospital violated certain of his constitutional rights under Section 1983.  Id. ¶ 214.  The Hospital

---

[4]  In the alternative, the claims against these defendants can be dismissed for the reasons set forth in Part II.F., G. infra.

responds that the complaint should be dismissed, among other reasons, because the Hospital is

not a state actor but a private, nonprofit organization and, even assuming for argument's sake

that it is a state actor, the doctrine of <u>respondeat superior</u>—the theory Heicklen alleges against

the Hospital here—is inapplicable to Section 1983 claims.  Hosp.'s Mem. at 3-5.[5]

In order to succeed on a Section 1983 claim, a plaintiff must, as a threshold matter, show

that the defendant, acting under the color of state law, deprived him of a constitutional right.

<u>See, e.g.</u>, <u>Rodriguez v. Phillips</u>, 66 F.3d 470, 473 (2d Cir. 1995).  "The under-color-of-state-law

element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory

or wrongful."[6] <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999) (citations and

internal quotations omitted).  Generally, "[a] private hospital is not considered a state . . . actor"

for Section 1983 purposes.  <u>Urena v. Wolfson</u>, No. 09 Civ. 1107 (KAM) (LB), 2010 WL

5057208, at *10 (E.D.N.Y. Dec. 6, 2010) (citations omitted); <u>accord</u> <u>Liburd v. Bronx Lebanon

Hosp. Ctr.</u>, No. 07 Civ. 11316 (HB), 2008 WL 3861352, at *7 (S.D.N.Y. Aug. 19, 2008)

("'[U]nless certain rare conditions exist, private hospitals . . . are not state actors for purposes of

Section 1983.'" (quoting <u>Amofa v. Bronx-Lebanon Hosp. Ctr.</u>, No. 05 Civ. 9230 (SHS), 2006

WL 3316278 (S.D.N.Y. Nov. 13, 2006))).

Here, in support of its motion to dismiss and its assertion that it is not a state actor, the

Hospital has submitted various affidavits and other materials.  The Court may not consider these

---

[5] Heicklen never submitted an opposition to the Hospital's motion to dismiss; however, his failure to oppose the motion does not alone merit dismissal of these claims.  See McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000); Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).  "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."  McCall, 232 F.3d at 323.

[6] "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (quoting United States v. Price, 383 U.S. 787, 794 n.7 (1966)).

materials without converting the Hospital's motion to dismiss into a motion for summary judgment. See Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) ("[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (citations and internal quotation marks omitted); see also Fed. R. Civ. P. 12(d).

Since the Hospital has provided Heicklen with the required notice pursuant to Local Civil Rule 12.1 that informed him that the motion might be treated as one for summary judgment and that the complaint might be dismissed if he failed to file "affidavits or documentary evidence contradicting the facts asserted by the Defendant," Notice to Pro Se Litigant (Dkt. No. 24) at 2, and since Heicklen has had "a reasonable opportunity to meet facts outside the pleadings," Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999), the Hospital's motion should be converted to one for summary judgment. See, e.g., In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985) (citations omitted) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted.").

In considering a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47, 50 (2d Cir. 2009). "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

13

nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Lindsay, 581 F.3d at 50. Further, summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Here, it is undisputed that the Hospital is a "domestic, Non-For-Profit Corporation" and thus a "private corporation, . . . duly registered as a private entity with the New York State Department." Declaration of Alexandra Fridel dated September 22, 2010, Ex. F (Affidavit of Marie Cavanagh), at ¶ 3 (Dkt. No. 22-8). Accordingly, summary judgment on this claim should be granted. See, e.g., Urena, 2010 WL 5057208, at *10 (summary judgment on section 1983 claim against New York Dowtown Hospital granted because it is private hospital not acting under color of state law).[7] Further, since the Hospital is not a state actor and the complaint contains no allegations that its employees acted under the compulsion of, or in concert with, any of the Federal Defendants, see Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 258 (2d Cir. 2008), it follows that the John and Jane Doe Defendants employed by the Hospital are not state actors either. Thus, to the extent Heicklen alleges distinct constitutional claims against the individual defendants, they are without merit and should be dismissed sua sponte.[8]

Even assuming that the Hospital did act under the color of state law, summary judgment on this claim should still be granted because, as the Hospital correctly notes, respondeat superior

---

[7] Heicklen's 269 paragraph complaint is hardly a "short and plain statement of the claim," but because the Court resolves the claims against the Hospital on this ground, it will not reach the issue of whether the claims against the Hospital pass muster under Rule 8(a)(2).

[8] In the alternative, claims against these defendants can be dismissed for the reasons set forth in Part II. F., G. infra.

liability—the theory Heicklen advances in his complaint—is inapplicable to Section 1983

claims. Hosp.'s Mem. at 3. Indeed, "'the doctrine of respondeat superior standing alone does

not suffice to impose liability for damages under section 1983 . . . .'" Rodriguez v. Mount

Vernon Hosp., No. 09 Civ. 5691 (GBD) (JLC), 2011 WL 3163506, at *6 n.6 (S.D.N.Y. July 27,

2011) (quoting Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003)); see also

Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983) ("As [Health and Hospitals

Corporation] cannot be held liable under § 1983 on a respondeat superior theory, proof that the

corporation employed a tortfeasor will not, standing alone, establish liability." (internal citation

omitted)). Instead, "[t]o hold a state actor liable under § 1983 for the unconstitutional actions of

its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or

custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."

Schoolcraft v. City of New York, No. 10 Civ. 6005 (RWS), 2011 WL 1758635, at *3 (S.D.N.Y.

May 6, 2011) (internal alterations, citation, and quotations omitted) (dismissing section 1983

claim against Jamaica Hospital Medical Center where plaintiff failed to allege that employees

acted pursuant to official policy or custom). Thus, even assuming that the Hospital was acting

under the color of state law, since Heicklen has offered no evidence in support of any of these

elements, the grant of summary judgment on this claim is still warranted.

### D.  Claims against the Federal Defendants

Heicklen alleges that all of the defendants in this action deprived him of his constitutional

rights in violation of 42 U.S.C. § 1983, Compl. ¶ 214, and seeks money damages for these

alleged abuses. Id. ¶ 265. Since Heicklen is proceeding pro se, I construe his Section 1983

15

claims against the Federal Defendants as claims arising under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[9]

Bivens established the principle that the "victims of a constitutional violation by a federal official have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." <u>Carlson v. Green</u>, 446 U.S. 14, 18 (1980).  To state a claim under <u>Bivens</u>, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 129 S. Ct. at 1948; accord <u>Adekoya v. Holder</u>, 751 F. Supp. 2d 688, 694 (S.D.N.Y. 2010) (citing <u>Barbera v. Smith</u>, 836 F.2d 96, 99 (2d Cir. 1987) ("To state a claim under <u>Bivens</u>, a plaintiff must allege that an

---

[9] "Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under <u>Bivens</u>, . . . ." <u>Spinale v. United States Dept. of Agriculture</u>, 621 F. Supp. 2d 112, 119-20 (S.D.N.Y. 2009) (citing <u>Tavarez v. Reno</u>, 54 F.3d 109, 110 (2d Cir. 1995)).  I thus do not construe Heicklen's complaint as asserting claims under the Federal Tort Claims Act ("FTCA").

But even if I were to construe Heicklen's complaint as asserting tort claims against the Federal Defendants, I would recommend that the claims be dismissed.  The FTCA provides that the United States—not its agencies or employees—may be sued "for injury or loss of property, or for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).  Heicklen has not asserted any claims against the United States in this action.  Moreover, Heicklen does not allege that he has exhausted his administrative remedies before bringing any FTCA suit, and the Federal Defendants have submitted a declaration that establishes that Heicklen "has not filed a FTCA claim for injury or damages with [the Federal Protective Service]." Declaration of Karen Smith dated June 2, 2011 (Dkt. No. 66).  In order to pursue a claim under the FTCA, the plaintiff must have "first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a).  If the agency denies the claim or more than six months pass without the agency making a final decision, the plaintiff is entitled to file a lawsuit in federal district court. <u>Id.</u>  The FTCA's exhaustion requirement "is jurisdictional and cannot be waived." <u>Celestine v. Mount Vernon Neighborhood Health Ctr.</u>, 403 F.3d 76, 82 (2d Cir. 2005).  Thus, even if I were to construe Heicklen's complaint as asserting claims under the FTCA, I would recommend that the claims be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

16

individual defendant personally committed a specific wrongful act that violated a well-established constitutional right of which a reasonable person would have known.").

Heicklen's complaint can be read to assert Bivens claims against the Bureau and the other Federal Defendants in their official and individual capacities. Broadly construed, the complaint alleges violations of Heicklen's First and Fourth Amendment rights. Compl. ¶ 214.[10] I address these issues in turn below.[11]

### 1. Bivens Claims against the Bureau, Napolitano, and the Officers in their Official Capacities[12]

Heicklen's claim against the Bureau and the other Federal Defendants in their official capacities should be dismissed on sovereign immunity grounds. "'It is axiomatic that the United

[10] Although Heicklen also invokes the Fifth and Fourteenth Amendments in his complaint, Compl. ¶ 214, he clarifies his claims in his opposition submissions. Pl.'s Fed. Opp'n (July 5, 2011 Letter) at 1 ("The causes for action [sic] are violations of Amendment I and IV of the U.S. Constitution.").

[11] In support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Federal Defendants have submitted a number of documents. These documents consist of various correspondence to the Court in both this case and a related criminal case in which Heicklen has been charged with jury tampering. To the extent necessary, the Court can take judicial notice of these materials and thus need not convert the motion to dismiss to one for summary judgment. See, e.g., Friedl, 210 F.3d at 83-84; Fed. R. Civ. P. 12(d). I have considered the Declaration of Karen A. Smith in the context of the Federal Defendants' motion to dismiss pursuant to Fed. R. Civ. 12(b)(1), in which the Court may permissibly consider evidence outside of the pleadings. See, e.g., Markarova, 201 F.3d at 113.

[12] Neither the Bureau nor Oakes are listed as defendants in the caption of the complaint. In fact, they are mentioned only once in the body of the complaint itself. Compl. ¶ 231 ("The U.S. Central Violations Bureau and Michael F. Oakes are charged with extortion under federal law . . . ."). Although Rule 10(a) of the Federal Rules of Civil Procedure requires that every party to an action be named in a complaint's caption, the caption itself is normally not determinative of the identity of the parties or of the pleader's statement of claim. Prisco v. State of New York, 804 F. Supp. 518, 521 (S.D.N.Y. 1992); see also 5 C. Wright, et al., Federal Practice & Procedure § 1321, at 388 (3d ed. 2004) ("Although helpful to the district court . . . the caption is not determinative as to the identity of the parties to the action."). I thus conclude that both the Bureau and Oakes are intended defendants. See, e.g., Ocasio v. Riverbay Corp., No. 06 Civ. 6455 (PAC) (KNF), 2007 WL 1771770, at *7 (S.D.N.Y. June 19, 2007) (even though individual not named in caption text of complaint established that plaintiff intended to name individual as defendant).

17

States may not be sued without its consent . . . .'" United States v. Navajo Nation, 537 U.S. 488, 502 (2003) (quoting United States v. Mitchell, 463 U.S. 206 212 (1983)). Put differently, "the United States, as sovereign, is immune from suit save as it consents to be sued." Lehman v. Nakshian, 453 U.S. 156, 160 (1981). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475-76 (1994) (rejecting expansion of Bivens-type causes of actions directly against federal agency); accord Platsky v. CIA, 953 F.2d 26, 28 (2d Cir. 1991) (citations omitted) ("[E]ven in Bivens actions jurisdictional limitations permit a plaintiff to sue only the federal government officials responsible for violating the plaintiff's constitutional rights; a plaintiff cannot sue the agency for which the officials work."). The sovereign immunity that shields the Federal Government and its agencies from suit also extends to officers of the United States "act[ing] in their official capacities," Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005), because such actions are "essentially a suit against the United States." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). Exceptions to this immunity exist only when the federal government has "unequivocally expressed" it and cannot arise by implication. United States v. Nordic Village Inc., 503 U.S. 30 (1992) (internal quotations omitted); see also Diaz v. United States, 517 F.3d 608, 611 (2d Cir. 2008). It is the plaintiff's burden to demonstrate that sovereign immunity has been waived. See Makarova, 201 F.3d at 113.

Heicklen takes issue with the very notion of sovereign immunity. See, e.g., Pl.'s Fed. Opp'n at 6 ("[T]he government, its agencies, and its employees are not sovereign. The citizens are sovereign."). But he fails to demonstrate the necessary waiver of sovereign immunity here. Accordingly, as the Bureau is part of the Administrative Office of the United States Courts, a federal agency, Heicklen's claims against the Bureau should be dismissed. See, e.g., Meyer, 510 U.S. at 475; Platsky, 953 F.2d at 28. The same is true of Heicklen's Bivens claims against the

other Federal Defendants in their official capacities.  These claims are barred by sovereign immunity and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  See, e.g., Robinson, 21 F.3d at 510 (concluding that constitutional claim against "individual federal defendants in their official capacities were properly dismissed on the ground of sovereign immunity").[13]

### 2. Bivens Claims against the Federal Defendants in their Individual Capacities

As for Heicklen's claims against these defendants in their individual capacities, the Federal Defendants move to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  Fed. Defs.' Mem. at 17-29.

#### a. Claim Against Oakes in his Individual Capacity

Heicklen's individual capacity claim against Oakes, whom Heicklen simply lists in the caption of the complaint as the "Divisional Officer Manager" of the Bureau, should be dismissed.  To maintain such a claim against Oakes in his individual capacity, Heicklen would need to plead that Oakes, "through [his] own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948.  There are no such allegations here.  Indeed, apart from purporting to "charge" Oakes with a violation of two federal criminal statutes, Compl. ¶ 232, the complaint contains no allegations regarding Oakes specifically at all.

In any event, even if Heicklen had alleged the requisite personal involvement of Oakes in any purported violation of his constitutional rights, Oakes is immune from suit.  Although the Federal Defendants contend that Oakes is entitled to absolute immunity from suit, Fed. Defs.' Mem. at 9, absolute immunity has only been granted to officials where they were performing

---

[13] To the extent that Heicklen is suing DHS itself, the agency is also entitled to sovereign immunity.

functions at the direction of judges.  See, e.g., Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988)

(law clerk granted absolute immunity because she clearly assisted judge in carrying out judicial

functions).  By contrast, where, as here, the court employee performs ministerial, non-judicial

duties, he is entitled to qualified, good faith immunity.  See Isasi v. Heinemann, No. 08 Civ.

5284 (BMC), 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009) (citing Kane v. Han, 550 F.

Supp. 120, 122-23 (E.D.N.Y. 1982)); Gutierrez v. Vergari, 499 F. Supp. 1040, 1047 n.5

(S.D.N.Y. 1980)) (court clerks entitled to qualified immunity where plaintiff alleged no facts

suggesting that they were personally involved in processing of court documents pertaining to

plaintiff's habeas petition).  Under this immunity, court employees such as Oakes are "shielded

from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  Heicklen's Bivens claim against Oakes should therefore

be dismissed on this ground as well.

### b. Claim Against Napolitano in her Individual Capacity

The claims against Napolitano in her individual capacity should also be dismissed.  Apart

from naming Napolitano in its caption, the complaint contains only a single allegation against

Napolitano—that she does not have offices in New York County.  Compl. ¶ 10.  "It is well-

settled that 'where the complaint names a defendant in the caption but contains no allegations

indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the

complaint in regard to that defendant should be granted.'"  Dargan v. Heath, No. 10 Civ. 7360

(PKC), 2011 WL 1795814, at *4 (S.D.N.Y. May 4, 2011) (citing Dove v. Fordham Univ., 56 F.

Supp. 2d 330, 335 (S.D.N.Y. 1999) and McCoy v. Goord, 255 F. Supp. 2d 233, 257-58

(S.D.N.Y. 2003)) (motion to dismiss Section 1983 claim granted where complaint named

defendant in caption and only contained single allegation against defendant).  That is exactly the

case here.  Heicklen apparently names Napolitano in his complaint because she is the head of the DHS, the employer of the Officers who Heicklen alleges violated his First and Fourth Amendment rights.  Yet "vicarious liability is inapplicable to Bivens . . . suits."  Iqbal, 129 S. Ct. at 1948.  For these reasons and because the complaint contains no allegations that Napolitano "through [her] own individual actions, has violated the Constitution," id. at 1948, Heicklen's Bivens claims against Napolitano in her individual capacity should be dismissed.

### c. Claims Against the Officers in their Individual Capacities

Broadly construed, the complaint alleges Bivens claims against the Officers—Federal Protective Services Officers C. Barnes, Wong, and Roond and eight John Doe Federal Protective Officers—for violations of Heicklen's First Amendment rights when they enforced 41 C.F.R. § 102-74.415(c)—the regulation under which Heicklen received violations—and violations of his Fourth Amendment rights for arresting him without probable cause.  Compl. ¶¶ 86, 210, 214.[14]  I address Heicklen's First Amendment claims first.

---

[14] 41 C.F.R. § 102-74.415(c) provides:

All persons entering in or on Federal property are prohibited from . . . (c) Distributing materials, such as pamphlets, handbills or flyers, unless conducted as part of authorized Government activities. This prohibition does not apply to public areas of the property as defined in 10271.20 of this chapter. However, any person or organization proposing to distribute materials in a public area under this section must first obtain a permit from the building manager as specified in subpart D of this part.  Any such person or organization must distribute materials only in accordance with the provisions of subpart D of this part.

41 C.F.R. § 10271.20 defines a "public area" as "any area of a building under the control and custody of [the General Services Administration] that is ordinarily open to members of the public, including lobbies, courtyards, auditoriums, meeting rooms, and other such areas not assigned to a lessee or occupant agency."  The plaza in front of the Courthouse where Heicklen distributed his materials is a courtyard and thus falls within the meaning of this definition.

21

### i.   First Amendment Claims

As an initial matter, it is unclear whether a plaintiff may permissibly bring a <u>Bivens</u> suit

for alleged damages arising out of violations of the First Amendment.  <u>Bivens</u> itself involved an

action against federal employees to recover damages arising out of a Fourth Amendment

violation:  the plaintiff there had been subjected to an unlawful, warrantless search which

resulted in his arrest.  <u>Bivens</u>, 403 U.S. at 389-90.  The <u>Bivens</u> doctrine subsequently has been

extended to situations involving other constitutional violations.  <u>See, e.g.</u>, <u>Carlson v. Green</u>, 446

U.S. 14, 17-19 (1980) (Eighth Amendment deliberate indifference claim); <u>Davis v. Passman</u>, 442

U.S. 228, 230 (1979) (Fifth Amendment due process claim).  However, as the Second Circuit has

observed, "the Supreme Court has warned that the <u>Bivens</u> remedy is an extraordinary thing that

should rarely if ever be applied in new contexts."  <u>Arar v. Ashcroft</u>, 585 F.3d 559, 571 (2d Cir.

2009) (citations and internal quotation marks omitted).  Although the Federal Defendants argue

that "the Supreme Court has specifically held that no <u>Bivens</u> cause of action exists for First

Amendment violations of free speech," Fed. Defs.' Mem. at 20 (citations omitted), it has only so

concluded in the context of violations of federal employees' First Amendment rights by their

employers.  <u>See</u> <u>Bush v. Lucas</u>, 462 U.S. 367, 389-90 (1983).  More recently, the Supreme Court

has simply assumed without deciding that a First Amendment claim outside of that context is

actionable under <u>Bivens</u>.  <u>Iqbal</u>, 129 S. Ct. at 1948.  I will take the same approach here.[15]

Since a <u>Bivens</u> claim is the "federal analog to suits brought against state officials under . .

. 42 U.S.C. § 1983," <u>id.</u> at 1948, in order to prevail on a First Amendment <u>Bivens</u> claim,

Heicklen must "demonstrate that his conduct is deserving of First Amendment protection and

that the defendants' conduct of harassment was motivated by or substantially caused by his

---

[15] As the Federal Defendants note, the Second Circuit has found no First Amendment
<u>Bivens</u> cause of action in a number of contexts, though none exactly like the present case.  Fed.
Defs.' Mem. at 20 (citations omitted).

exercise of free speech." Rattner v. Netburn, 930 F.2d 204, 208 (2d Cir. 1991) (citing Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987)); accord Posr v. Court Officer Shield No. 207, 180 F.3d 409, 418 (2d Cir. 1999) (citation omitted).

Assuming that Heicklen's First Amendment claim is actionable under Bivens, it still fails and should therefore be dismissed. Regarding the first prong—whether Heicklen's conduct is deserving of First Amendment protection—I begin by examining the nature of the forum in which the speech was restricted. "The category of the forum determines the appropriate test for weighing 'the Government's interest in limiting the use of its property to its intended purpose [against] the interest of those wishing to use the property for other purposes.'" Huminski v. Corsones, 396 F.3d 53, 89 (2d Cir. 2005) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 800 (1985)). "Supreme Court and Second Circuit precedent are clear that a courthouse is a non-public forum." Washpon v. Parr, 561 F. Supp. 2d 394, 409 (S.D.N.Y. 2008) (citing Huminski, 396 F.3d at 90-91 and United States v. Grace, 461 U.S. 171, 178 (1983)). (restrictions on arrestee's speech reasonable in light of plaintiff's failure to pass through security or to comply with officer's directive to leave courthouse); accord Bank v. Katz, No. 08 Civ. 1033 (NGG) (RER), 2009 WL 3077147, at *2 (E.D.N.Y. Sept. 24, 2009). And, it is a forum that extends to "court lands"—here, the plaza in front of the Courthouse. See Huminski, 396 F.3d at 90 ("courthouses, court lands, and parking lots" but not public sidewalks, streets, or parks constitute nonpublic fora). In such nonpublic fora, "governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and are not an effort to suppress expression merely because public officials oppose the speaker's view." Id. (quotation and internal quotation marks omitted).

The regulation at issue here meets this test. It is content neutral and refers to all "pamphlets, handbills, or flyers" without regard to the speaker's view. See 41 C.F.R. § 102-

23

74.415(c).  Moreover, it is reasonable in light of the use to which the forum is dedicated.  A

courthouse serves to facilitate the government's judicial functions:

> A courthouse serves . . . to provide a locus in which civil and criminal disputes
> can be adjudicated.  Within this staid environment, the presiding judge is charged
> with the responsibility of maintaining proper order and decorum.  In carrying out
> this responsibility, the judge must ensure that the courthouse is a place in which
> rational reflection and disinterested judgment will not be disrupted.

Huminski, 396 F.3d at 91 (citations omitted).  In light of this purpose, expressive activities inside

and outside a courthouse can interfere with a court's attendance to its business.  See id. at 92

("[T]he reasons that lead us to conclude that the purposes of the courthouse are not compatible

with those of expressive activities suggest to us, if less powerfully, that there are various kinds of

expressive activities that, if conducted in these [parking] lots, might well interfere with courts'

attendance to their business.").  This is particularly so here because Heicklen's purpose in

distributing literature to prospective jurors was to encourage those who ended up being seated on

a jury to "judge the law as well as the facts." Compl. Ex. E.  This is precisely the sort of

expressive activity that has the ability to disrupt "reflection and disinterested judgment,"

Huminski, 396 F.3d at 91, the dedicated purpose of the Courthouse and the property on which it

sits.  Further, the regulation is reasonable because it does not prohibit speech entirely.  Indeed, if

Heicklen had wished to distribute his literature on the plaza in front of the Courthouse, he could

have applied for a permit to do so.

    In sum, Heicklen has failed to demonstrate that his conduct is deserving of First

Amendment protection.  Because Heicklen has failed to meet this prong of the test, the Court

need not consider its second prong—whether the defendants' conduct was motivated by or

substantially caused by his exercise of free speech.  See Washpon, 561 F. Supp. 2d at 408

(focusing on first prong and dismissing First Amendment claim).  Accordingly, Heicklen's First

Amendment <u>Bivens</u> claims against the Officers in their individual capacities should be dismissed.[16]

### ii.    Fourth Amendment Claim

Heicklen alleges that 41 C.F.R. § 102-74.415, the regulation under which he received a citation and was arrested for violating, is inapplicable to the public, does not have the effect of law, and thus that enforcement of this regulation against him was unconstitutional. Compl. ¶¶ 208-10, 212. Broadly construed, the complaint alleges that the Officers who enforced this regulation and arrested him did so without probable cause in violation of the Fourth Amendment. Compl. ¶¶ 210, 214; <u>see also</u> Pl.'s Fed. Opp'n at 5 ("Plaintiff posed no threat to the federal buildings, grounds, or property by distributing pamphlets. Therefore there was no authority transferred to the Department of Homeland Security to arrest or cite him."). The Federal Defendants respond, among other things, that the regulation under which the Officers arrested Heicklen has the force of law and that the Officers enforcing it had sufficient probable cause to arrest Heicklen, thus defeating any Fourth Amendment <u>Bivens</u> claim. Fed. Defs.' Mem. at 19-20, 23-24.

To state a <u>Bivens</u> claim for false arrest in violation of the Fourth Amendment, a plaintiff must allege that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." <u>Williams v. Young</u>, 769 F. Supp. 2d 594, 602 (S.D.N.Y. 2011) (citing <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995)). The existence of probable cause is an absolute defense to a <u>Bivens</u> claim for false arrest. <u>See, e.g.</u>, <u>Valdez v. United States</u>, No. 08 Civ. 4424 (RPP), 2009 WL 2365549, at *8 (S.D.N.Y. July 31, 2009) (citing <u>Escalera v.</u>

---

[16] In light of this conclusion, the Court need not address the Federal Defendants' qualified immunity argument. <u>See</u> Fed. Defs.' Mem. at 22.

Lunn, 361 F.3d 737, 743 (2d Cir. 2004) and Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir.

2003)).  Probable cause requires

> an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty.  Courts should look to the totality of the circumstances and must be aware that probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.

Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal citations, quotations, and

alterations omitted).

Probable cause for Heicklen's arrest undoubtedly existed here as the Officers were

merely enforcing a regulation that they directly observed Heicklen violating.  See, e.g., Randle v.

Rakiecki, No. 08 Civ. 579A, 2009 WL 4571822, at *2-3 (W.D.N.Y. Dec. 7, 2009) (probable

cause defeating false arrest Bivens claim existed and motion to dismiss granted where defendant

directly observed clear and undisputed violation of federal regulations; defendant had ample

reason to detain men in question and issue violation notices).[17]

Additionally, contrary to Heicklen's contentions, the regulation itself does apply to the

public and have the force of law.  As the Federal Defendants note, pursuant to its Property

---

[17] As in Randle, a finding of probable cause also extends qualified immunity to the Officers here. Randle, 2009 WL 4571822, at *3.  Even if the Officers had committed Fourth Amendment violations as Heicklen claims, they would be "entitled to qualified immunity if either (1) [their] actions did not violate clearly established law or (2) it was objectively reasonable for [them] to believe that [their] actions did not violate clearly established law." Moore v. Andreno, 505 F.3d 203, 208 (2d Cir. 2007).  The right to be free from arrest without probable cause was well established at the time Heicklen was arrested.  See, e.g., Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).  Nonetheless, the Officers would be entitled to qualified immunity because, assuming all facts as alleged by Heicklen to be true, it was "objectively reasonable" for them to believe that their acts did not violate the rights in question. Moore, 505 F.3d at 208.  The Officers here were merely enforcing a clear violation of a valid regulation promulgated pursuant to Congress' Property Clause powers.

Clause powers, Congress specifically delegated the authority to the DHS Secretary to promulgate regulations "'for the protection and administration of property owned or occupied by the Federal Government and persons on the property.'" Fed. Defs.' Mem. at 19 (quoting 40 U.S.C. § 1315(c)(1)).[18] Courts assume "generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." United States v. Mead Corp., 533 U.S. 218, 230 (2001) (citations omitted). Because 41 C.F.R. § 102-74.415 was the result of notice-and-comment rulemaking, see 64 Fed. Reg. 39083-01 (July 21, 1999); 65 Fed. Reg. 10027-01 (Feb. 25, 2000) and was published in the Federal Register after its creation, 70 Fed. Reg. 67786-01 (Nov. 8, 2005)—formal administrative procedures to be sure— the regulation at issue here carries the force of law. See id.; cf. Kruse v. Wells Fargo Home Mortg., Inc., 383 F.3d 49, 59 (2d Cir. 2004) (adjudications and interpretations promulgated by an agency pursuant notice-and-comment rulemaking are accorded Chevron deference, which applies only to agency promulgations that have the force of law).

In sum, Heicklen has failed to allege any facts allowing him to plausibly state a Fourth Amendment Bivens claim against the Officers in their individual capacities and such claims against them should therefore be dismissed.[19]

---

[18] The Property Clause provides that "[t]he Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State." U.S. Const. art. IV, § 3, cl. 2.

[19] In light of my conclusions regarding the various failings in Heicklen's complaint, the Court need not rule on the Federal Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process. See, e.g., Saleh v. Holder, No. 09 Civ. 9066 (DAB) (GWG), 2010 WL 5376210, at *11 n.5 (S.D.N.Y. Dec. 29, 2010); Williams v. United States, No. 07 Civ. 3018 (RJS) (THK), 2010 WL 963474, at *16 n.13 (S.D.N.Y. Feb. 25, 2010).

### E.  Claims against HHC

Heicklen lists HHC, the entity which operates Bellevue, in the caption of the complaint but, apart from the blanket allegation that all of the defendants in the action violated Heicklen's constitutional rights, Compl. ¶ 214, the complaint itself contains no allegations regarding HHC at all.  Although HHC has not moved or otherwise responded to the complaint, the claims against it should still be dismissed sua sponte "[a]s [HHC] cannot be held liable under § 1983 on a respondeat superior theory[;] proof that the corporation employed a tortfeasor will not, standing alone, establish liability."  Health & Hosps. Corp., 710 F.2d at 45.  Moreover, Heicklen does not allege that HHC, Bellevue or its employees acted pursuant to any official policy or custom that caused him to be subjected to a denial of a constitutional right.  See Schoolcraft, 2011 WL 1758635, at *3.  The claims against HHC should therefore be dismissed sua sponte.

### F.  Purported Criminal Claims against Defendants

Throughout the complaint Heicklen purports to "charge" the defendants in this action with violations of various provisions of state and federal criminal law, including extortion, robbery, perjury, and larceny, for which he has not alleged a private right of action.  See Compl. ¶¶ 215-46.  Insofar as Heicklen seeks to compel the United States Attorney's Office (the "Office") to conduct an investigation of his claims and bring criminal charges against the defendants in this action, Heicklen has no private right of action to enforce state or federal criminal statutes and lacks the authority to institute an investigation by the Office or this Court.  See Robinson, 21 F.3d at 511; see also Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994) (refusing to infer a private right of action from a "bare criminal statute"); Cort v. Ash, 422 U.S. 66, 79 (1975) (no private right of action exists under criminal statutes unless there is a clear statutory basis for such an inference); Storm–Eggink v. Gottfried,

28

409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (affirming dismissal of pro se complaint because, among other reasons, no private right of action to enforce criminal laws).

The Court thus has no jurisdiction to hear these claims, and they should be dismissed.

### G.  Non-Moving Defendants

A number of the named Defendants in this action have not moved to dismiss the claims against them because there is no indication in the record that they have been properly served. These Defendants are (1) Bellevue and the seven John and Jane Doe defendants employed there; (2) the John and Jane Doe defendants employed by the Hospital; and (3) the John Doe Defendants employed by the FDNY (together, the "Unserved Defendants").

Rule 4(m) provides that if a defendant is not served within 120 days after the complaint is filed, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant . . . . But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P 4(m). Heicklen filed the complaint on March 15, 2010, and since then the Court has consistently provided him with notice of his obligation to effectuate service of the summons and complaint on all of the Defendants in this action and warned him of the consequences of failing to do so. See Order dated April 16, 2010 (Dkt. No. 4) ("If service is not made by July 13, 2010, or if no application is made in writing by such date to extend the time for service showing good cause for the failure to serve, this action may be dismissed without prejudice."); Order dated February 25, 2011 (Dkt. No. 47) ("Plaintiff, who is not proceeding in forma pauperis, is responsible for effectuating service on Bellevue Medical Center, . . . .").

Yet Heicklen has failed to show good cause for the failure to serve and has made no effort to effectuate service at all, stating that he would only do so after the Defendants provided him with the names of the respective John and Jane Doe Defendants whom they employ and he

29

is able to amend the complaint to include their names.  See, e.g., Letter from Julian Heicklen to the Court dated June 6, 2011 (Dkt. No. 60).  But the December 30, 2010 deadline for him to amend the complaint has long since passed, Order dated November 29, 2010 (Dkt. No. 32), and even though he was expressly permitted by the Court to conduct discovery to ascertain the names of the John and Jane Doe Defendants in this action, he has nevertheless refused to do so.[20]

Under these circumstances, the claims against the Unserved Defendants in this action—including the John and Jane Doe Defendants—should be dismissed without prejudice sua sponte pursuant to Fed. R. Civ. P. 4(m).  See, e.g., Spencer v. Ellsworth, No. 09 Civ. 3773 (JGK), 2011 WL 1775963, at *4 (S.D.N.Y. May 10, 2011) (claims against unserved John and Jane Doe defendants dismissed where plaintiff did not attempt to identify them and where complaint failed to assert any specific allegations against them in his complaint); Kearse v. Lincoln Hosp., No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009) (claims against John Doe defendant dismissed without prejudice where defendant had ample time to identify John Doe physician through discovery but made no effort to do so); cf. Warren v. Goord, 476 F. Supp. 2d 407, 413-14 (S.D.N.Y. 2007) (declining to dismiss claim against John Doe defendant "until plaintiff has had sufficient discovery to name the defendant" and noting distinction between incarcerated pro se plaintiffs who may need assistance in identifying John Doe defendants and those who are not in jail).[21]  This is particularly so as to the

---

[20] Notably, as Heicklen himself acknowledges, even after he learned the names of the John Does among the Federal Defendants, he still refused to attempt to amend the complaint. See Letter from Julian Heicklen to the Court dated June 6, 2011 at 1 (Dkt. No. 60).

[21] It is of no moment that the cases cited herein do not involve sua sponte dismissals inasmuch as Rule 4(m) expressly provides a court with the authority to dismiss a claim for lack of service "on its own" and, in any event, "[e]ven if a plaintiff paid a filing fee, as in this case, the Court has the power to dismiss sua sponte." Hanks v. Doe, No. 5:09-CV-1109 (NPM/GHL), 2010 WL 2516801, at *3 n.4 (N.D.N.Y. May 18, 2010) (citing Landesberg v. Biden, No. 96 Civ. 8772 (LMM), 1997 WL 33604, at *1 (S.D.N.Y. Jan. 29, 1997)).

John and Jane Doe Defendants employed at Bellevue or the Hospital whose names would likely appear in Heicklen's medical records.  Like the plaintiff in Kearse, there is no indication that Heicklen "has made any effort to discover the doctor[s'] name[s] even though, as a patient, [he] is entitled to access to his own medical records." Kearse, 2009 WL 1706554, at *3.

 For these reasons, the claims against the Unserved Defendants should be dismissed sua sponte without prejudice pursuant to Fed. R. Civ. P. 4(m).

### H.  Opportunity to Replead

Generally, a court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations and quotation marks omitted).  An opportunity to amend is not required, however, where any amendment would be futile—where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." Cuoco, 222 F.3d at 112 (citation omitted); see also Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009) (internal quotation marks omitted).  I recommend that the Court find that no further amendments can cure the deficiencies in the claims against the FDNY, the Hospital, HHC, and the Federal Defendants, and any attempt by Heicklen to replead these claims would thus be futile; accordingly the claims against these defendants should be dismissed with prejudice. See Cuoco, 222 F.3d at 112 (leave to amend pro se complaint denied where amendment would be futile); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (citation omitted) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice); Frith v. Hill, No. 07 Civ. 5899 (JSR), 2009 WL 3073716, at *18 (S.D.N.Y. Sept. 23, 2009) (collecting cases) (dismissing pro se

Bivens claim with prejudice where granting leave to amend would be futile and where leave to amend had already been granted twice).

## III.   CONCLUSION

For the foregoing reasons, the motions to dismiss of the FDNY, the Hospital, and the Federal Defendants should be granted, and the claims against them and HHC should be dismissed with prejudice.  I also recommend that the Court dismiss sua sponte the claims against each of the remaining defendants in this action without prejudice, except for St. Vincent's, against whom this action remains stayed pursuant to 11 U.S.C. § 362(a).

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Holwell.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See Thomas v. Arn, 474 U.S. 140, 154 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) (citing Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) and Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Plaintiff does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from Defendants' counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (noting

32

that the Court may ask opposing counsel to provide to a pro se litigant copies of decisions that

are available electronically).

Dated: New York, New York
       August 30, 2011

JAMES L. COTT
United States Magistrate Judge

**Copies of this Report & Recommendation have been sent by mail to:**

Julian Heicklen
734 Rutland Avenue
Teaneck, NJ 07666

Louis A. Pellegrino
Office of the United States Attorney
86 Chambers Street, 3d Floor
New York, NY 10007

Lesley Berson Mbaye
New York City Law Department
100 Church Street
New York, NY 10007

Alexandra Fridel
Martin Clearwater & Bell LLP
220 East 42nd Street
13th Floor
New York, NY 10017